RECEIVED
IN ALEXANDRIA, LA
MAY 26 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHRISTOPHER E. McNEIL<br>    FED. REG. #06607-046<br>VS.<br><br>JOE KEFFER, WARDEN | CIVIL ACTION NO. 09-0166<br><br>SECTION P<br><br>JUDGE DRELL<br>MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

*Pro se* petitioner Christopher E. McNeil filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2241 on January 29, 2009. Petitioner is an inmate in the custody of the Federal Bureau of Prisons (BOP); he is incarcerated at the United States Penitentiary, Pollock, Louisiana. Petitioner claims that the commencement date of his federal sentence has been miscalculated because the BOP failed to credit petitioner for all time spent in custody. He also claims that the United States and the State of New Hampshire relinquished jurisdiction over petitioner by failing to provide an extradition hearing. He asks the court: (1) to direct the BOP to recalculate the date upon which his federal sentence began; (2) to issue an order stating that the State of New Hampshire relinquished jurisdiction when it paroled petitioner to federal custody; (3) to grant bail; and (4) to enjoin the United States to "... desist from any further imprisonment of petitioner..." and to provide him with $500 cash, an airline ticket to a destination of his choice, suitable

5

clothing, and two forms of identification.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

## Statement of the Case

The record and exhibits submitted by petitioner [see rec. doc. 1, pp. 5-7; rec. doc. 1-3, pp. 5-8] establish the following chronology:

1. Petitioner was arrested in North Dakota on March 15, 2000 by agents of the Federal Bureau of Investigation and the State of North Dakota.

2. On March 31, 2000 the State of New Hampshire placed a parole violation detainer against petitioner with the North Dakota authorities. Petitioner was alleged to have violated the terms of his New Hampshire parole on June 21, 1999. [See rec. doc. 1-4, Exhibit D, p. 13 - according to the warrant, petitioner was, while on parole, arrested for driving as an habitual offender; he then escaped from the Dover, New Hampshire Police Department.]

3. On December 7, 2000 petitioner was sentenced to consecutive sentences totaling 113 months by the United States District Court for the District of Montana following petitioner's

2

convictions for transportation of a stolen firearm and identification fraud. See <u>United States v. Christopher E. McNeil</u>, No. 2:00-cr-00007-001.

4. In January 2001 petitioner was returned to New Hampshire where he appeared before that State's Parole Board in February and March 2001 to answer to alleged violations of the conditions of his parole. [See also rec. doc. 1-4, Exhibit A, p. 10, Minutes of the New Hampshire Parole Board, February 27, 2001 stating, "Offender requested court appointed counsel but will not complete documents required to request counsel. Claims he was advised by federally appointed atty. Anthony Gallagher not to complete forms. Will not waive right to hearing within 45 days."]

5. On June 18, 2001 petitioner was returned to the custody of the State of North Dakota to answer to charges pending in that jurisdiction.

6. On June 20, 2001, federal authorities placed a detainer against the petitioner with the North Dakota authorities.

7. On July 10, 2001 North Dakota dismissed charges which were pending in Stark County under Docket Number 00K-373.

8. On August 2, 2001 the United States Marshal for the District of Montana took custody of petitioner.

9. Petitioner was tried and convicted for making false statements. On January 23, 2002 he was sentenced to serve 18 months by the United States District Court for the District of

Montana. The conviction and sentence were reversed by the United States Ninth Circuit Court of Appeals in the matter of <u>United States v. McNeil</u>, 362 F.3d 570 (9th Cir. 2004).

10. On April 18, 2002 petitioner was sentenced to serve 18 months by the United States District Court for the District of Montana following his convictions for Bank Fraud and Wire Fraud. This sentence was ordered to be served consecutive to his previous federal sentence.

11. On June 25, 2002 petitioner was transported to the United States Penitentiary, Allenwood, Pennsylvania. On August 23, 2002 the BOP Inmate Systems Manager at USP Allenwood corresponded to an Executive Assistant at the New Hampshire Department of Corrections. He advised "Pursuant to our previous discussions, the above referenced inmate [petitioner] was designated to Bureau custody in error. Therefore, he will be removed from this facility on Monday, August 26, 2003 for further transfer to your facility. [rec. doc. 3, p. 9]

12. On August 26, 2002 petitioner was returned to the custody of the New Hampshire Department of Corrections to answer to parole violation charges contained in warrants dated June 21,

1999[1] and August 29, 2002.[2] According to the petitioner, the authorities did not conduct an extradition hearing or any other proceedings pursuant to the Interstate Agreement on Detainers Act; further, counsel was not appointed and there was no writ of *habeas corpus ad prosequendum* authorizing petitioner's removal from federal custody in Pennsylvania to New Hampshire.

13. On November 19, 2002 petitioner denied the allegations contained in both warrants; the June 21, 1999 violation was dismissed, however, the parole board revoked parole having found that petitioner violated the terms of his parole by virtue of his federal conviction. He was then ordered to serve one-year in the custody of the New Hampshire Department of Corrections. [See rec. doc. 1-4, Exhibit C, p. 12; In a letter dated December 4, 2002, petitioner's public defender advised, "At the [November 19, 2002] Parole Hearing you pled not true to both parole violations. After the hearing, you were found true on just the violation regarding a conviction out of Federal Court. You were sentenced to a one year punitive set back."

14. On June 30, 2003 petitioner was sentenced by the

---

[1] The Affidavit and Warrant were executed on June 21, 1999. The parole violation alleged was petitioner's June 17, 1999 arrest for driving after being certified as an habitual offender and his subsequent escape from the Dover, New Hampshire Police Department. [rec. doc. 1-4, Exhibit D, p. 13]

[2] The Affidavit and Warrant were executed on August 29, 2002. The parole violation alleged was petitioner's December 7, 2000 federal firearms and fraud convictions in the United States District Court for the District of Montana.[rec. doc. 1-4, Exhibit B, p. 11]

Merrimack (New Hampshire) Superior Court (Cases Number 02-S-614, 615, and 03-S-911) to serve 4 to 10 years following his convictions for escape and receiving stolen property. [see rec. doc. 1-4, Exhibit F, p. 25]

15. On July 2, 2003 petitioner was paroled by the State of New Hampshire and transported to the United States Penitentiary, Allenwood, Pennsylvania to commence his federal sentence.

16. On July 31, 2003, New Hampshire lodged a detainer with the BOP demanding petitioner's return to their custody following completion of his federal sentence. [rec. doc. 1-4, Exhibit G, p. 26 – BOP Detainer Action Letter to New Hampshire Department of Corrections noting, "A detainer has been filed against this subject in your favor charging Receiving Stolen Property X2 and Escape (4-10 yrs). Release is tentatively scheduled for 04-26-2014, however, we will again notify you approximately 60 days prior to actual release."]

17. On March 3, 2008 petitioner submitted a Request for Informal Resolution of grievance to prison authorities at USP Pollock. Therein he claimed, "I was transferred to, arrived at, and accepted by the United States Penitentiary Allenwood, PA. facility to commence service of sentence at the official detention facility designated by the B.O.P. Therefore, my commencement of sentence begins upon this designation. The B.O.P. was not in error in designating me, and even had there been an

error (which there is not) it was not caused by any activity of the prisoner. I request my sentence computation sheets to reflect the correct start date based on my original designation in April/May 2002 to USP Allenwood and continuous credit thereafter." [rec. doc. 1-4, pp. 20-22]

On March 24, 2008, petitioner's grievance was denied. [rec. doc. 1-4, p. 23]

18. On March 31, 2008 petitioner submitted a formal Request for Administrative Remedy to the Warden which stated in part, "I request that my sentence computation begin at the time I was designated. I was in fact designated, received in custody, transported to, and arrived at USP Allenwood, PA for service of federal sentences on June 25, 2002. June 25, 2002 is the latest possible date on which my computation begins, not July 2, 2003, the current incorrect date. All time prior to June 25, 2002 is total prior jail credit." [rec. doc. 1-4, pp. 16-17]

On May 21, 2008 Warden Keffer denied relief and noted, "An investigation into this matter revealed you were sentenced by the New Hampshire Department of Corrections on June 30, 2003, you were sentenced by New Hampshire to 3 to 6 years for Receiving Stolen Property and 4 to 1- years for an Escape charge on June 18, 1999. No jail credit was given on this charge from the dates of March 15, 2000 (Date of arrest by FBI & North Dakota Highway Patrol), to August 25, 2002, (The day before being returned to

New Hampshire Department of Corrections for service of parole violation.) You were paroled on July 2, 2003, from the New Hampshire Department of Corrections and began your federal sentence on the same day. You in fact did receive 894 days of jail credit from the dates of March 15, 2000 to August 25, 2002.[3] You cannot receive time credit towards your federal sentence when the time is credited towards your state sentence." [rec. doc. 1-4, pp. 18-19]

19. On June 1, 2008 petitioner submitted a Regional Administrative Remedy Appeal. Among other things he alleged, "Federal employees of USP Allenwood on August 25, 2002 erroneously and voluntarily allowed NH DOC guards to come to Pennsylvania and assume custody of me despite having personally informed them that I had already been seen by the NH Parole Board. The FBOP by allowing this transfer circumvented any safeguards or rights that I may have been entitled to under the Interstate Agreement on Detainers and the Uniform Criminal Extradition Act. The FBOP having Primary Custodial Custody and having started my federal sentence by designating me to USP Allenwood where I served a couple of months in general population by intent, design or error in effect by transferring me to NH was allowing me to serve my federal sentence at the NH facility. In

---

[3] The Sentence Monitoring Computation Data sheet dated January 16, 2009 confirms that petitioner has been afforded credit for time served from March 15, 2000 thru August 25, 2002. [rec. doc. 1-4, Exhibit H, p. 29]

conclusion I request that my Sentence Computation start date be corrected to reflect the June 25, 2002 date, not July 2, 2003 the current incorrect date." [rec. doc. 1-4, pp. 7-8]

Petitioner's grievance was rejected on July 16, 2008 by the Regional Director who noted, "All time spent in presentence custody from the date of your arrest [March 15, 2000] through the day before you were returned to the New Hampshire Department of Corrections for service of a parole violation term [August 25, 2002], has been awarded as presentence credit toward your aggregate term, for a total of 894 days." [rec. doc. 1-4, pp. 5-6][4]

20. On July 28, 2008 petitioner submitted his appeal to the Central Office of the BOP. [rec. doc. 3, pp. 5-6]

On January 24, 2009 his appeal was rejected on the same basis as the previous rejections. However, the BOP Central Office reviewed petitioner's claim pursuant to Barden v. Keohane, 921 F.2d 476 (3 Cir. 1990) and 18 U.S.C. §3621 and determined that petitioner was not entitled to relief. [rec. doc. 3, pp. 7-8]

21. Petitioner filed his *habeas corpus* petition on January 29, 2009.

### Law and Analysis

*1. Ground One – The BOP miscalculated the commencement date of petitioner's sentence and failed to give petitioner post-sentence credit for time spent in state*

---

[4] See footnote 3, *supra*.

*custody after the BOP designated, transferred, and accepted the petitioner at his designated federal facility.*

Petitioner implies that because he was sentenced in federal court before his New Hampshire parole was revoked, and before he was convicted and sentenced in New Hampshire, the BOP had primary jurisdiction and custody of him. Therefore, according to petitioner, his current federal sentence ought to run from June 25, 2002 and be considered as running concurrently with time served in the custody of the New Hampshire Department of Corrections during the period from that date until July 2, 2003, the date he was paroled from New Hampshire and he was officially returned to BOP custody.

In support of this argument, he has produced evidence to establish that on November 19, 2002 New Hampshire dismissed the parole violation charges which arose in 1999 and predated his federal convictions and revoked parole instead on charges that arose only <u>after</u> his federal court convictions. Indeed, the federal conviction supplied the grounds relied upon to revoke petitioner's New Hampshire parole.

He contends that the BOP's error in assuming custody over him between June 25, 2002 and August 26, 2002 should not be attributed to petitioner, and he therefore claims that he should be considered as having been in BOP custody continuously from June 25, 2002 until July 3, 2003.

In other words, petitioner claims, that as a result of two circumstances - (1) the erroneous designation of petitioner to BOP custody in June 2002 and, (2) the fact that his New Hampshire parole was ultimately revoked because of violations which occurred subsequent to his federal convictions - the BOP had <u>primary jurisdiction</u> over his case, and therefore, he is entitled to credit against his federal sentence for the entire time he spent in a New Hampshire prison.

Petitioner further implies that even if New Hampshire had primary jurisdiction over him by virtue of the 1999 parole violation charge, it relinquished that jurisdiction when on November 19, 2002 those charges were dismissed and petitioner's parole was revoked based on petitioner's subsequent federal conviction.

The issue of which sovereign had primary jurisdiction and when is not relevant[5] however, because when a person has

---

[5] Even if the issue were relevant to petitioner's complaint, the law and evidence do not support his claim. New Hampshire ultimately dismissed the charges which supported the original parole revocation warrant; however, before those charges were dismissed, additional allegations supporting parole revocation had been lodged and remained pending against petitioner. Furthermore, additional criminal charges - receiving stolen goods and escape - were also pending and likewise predated petitioner's federal convictions. Thus New Hampshire retained primary jurisdiction over petitioner until such time as it was finished with him as a result of his parole status and as a result of these additional charges. Alternatively, even if New Hampshire somehow relinquished primary jurisdiction to the United States, the United States then <u>waived</u> primary jurisdiction when it transferred petitioner to New Hampshire after realizing the error. Primary jurisdiction may be relinquished when one sovereign permits another to incarcerate its prisoner without challenge. When a prisoner is sentenced in a federal court with primary jurisdiction, then released to stand trial on state charges, the United States yields primary jurisdiction when it allows the state to imprison the offender without challenging its jurisdiction. Compare <u>Thomas v. Whalen</u>, 962 F.2d 358, 362 n. 7

11

committed crimes against multiple sovereigns, the issue of who has jurisdiction over him is a matter of comity between the sovereigns. See Jake v. Herschberger, 173 F.3d 1059, 1065 (7th Cir.1999); Jeter v. Keohane, 739 F.2d 257, 258 (7th Cir.1984)(citing Ponzi v. Fessenden, 258 U.S. 254, 262, 42 S.Ct. 309, 66 L.Ed. 607 (1922)); see also Causey v. Civiletti, 621 F.2d 691, 694 (5th Cir.1980). Petitioner lacks standing to attack any agreement between the BOP and the State of New Hampshire by which he was transferred from federal custody to state custody for trial, sentencing, parole revocation or execution of sentence. See Weathers v. Henderson, 480 F.2d 559, 559-60 (5th Cir.1973).

Further, petitioner's sentence calculation comports with 18 U.S.C. §3585(b) which provides in pertinent part, "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ... that has not been credited against another sentence." Petitioner has not alleged, nor do the pleadings and exhibits otherwise establish, that he was not given credit against his New Hampshire parole revocation sentence for the entire time that is in question in these

---

(4th Cir.1992); Roche v. Sizer, 675 F.2d 507, 510 (2d Cir.1982). The BOP did not challenge New Hampshire's jurisdiction over petitioner. Indeed, the BOP voluntarily and purposefully returned him to New Hampshire's custody when it discovered that petitioner had been erroneously incarcerated at USP Allenwood. In other words, there is ample, incontrovertible evidence to establish that even if the BOP had primary jurisdiction, it intended to, and did in fact, voluntarily cede that primary jurisdiction to New Hampshire.

proceedings. Since he was apparently afforded credit for that time against his New Hampshire sentence, he is clearly not entitled to credit for that time toward his federal sentence.

When petitioner complained that he was not being properly credited for time served on his state sentence, the BOP properly conducted a review to determine whether the state facility should be designated *nunc pro tunc* for service of the federal sentence. See Barden, 921 F.2d at 481 (the BOP "must at least consider his case in accord with the broad statutory authority it has to make such *nunc pro tunc* designations").

Accordingly, in determining whether to make the *nunc pro tunc* designation, the BOP contacted the federal sentencing court in Montana to determine its intent with regard to whether petitioner's federal sentence should run concurrently with his New Hampshire sentence. The BOP further considered the nature and circumstances of the federal offense and the petitioner's history and characteristics. As of the date of its response to the petitioner's grievance, the BOP had received no word from the sentencing court; however, due consideration was given to the remaining factors and it was deemed inappropriate to afford discretionary relief to petitioner. That finding is entitled to substantial deference. Fegans v. United States, 506 F.3d 1101 at 1105 (8th Cir. 2007). Petitioner has provided no evidence that the BOP abused its discretion in making this determination.

In other words, it appears that petitioner has been credited with all of the time he is due. Thus, he is not entitled to relief on the basis of Claim One.

> **2. The United States Government and the State of New Hampshire relinquished, waived, and surrendered jurisdiction over petitioner in failing to grant petitioner extradition hearings, or interstate agreement on detainer proceedings, without writs of habeas corpus ad prosequendum being issued from the federal or state courts at all proper times.**

Petitioner also complains that he was not afforded a formal extradition hearing when he was "... voluntarily released from the BOP at the U.S.P. Allenwood and given into the custody of the State of New Hampshire Correctional Officers who removed the petitioner from the State of Pennsylvania, through the State of Massachusetts to the State of New Hampshire..."

Petitioner was on parole from New Hampshire at all times pertinent to these proceedings. New Hampshire, like most jurisdictions, imposes conditions of parole upon its parolees, including the condition that the parolee waive "... extradition to the State of New Hampshire from any state in the United States or any other place and return to New Hampshire if directed by the parole officer..." See State of New Hampshire, Office of Legislative Services, Division of Administrative Rules, Adult Parole Board, Chapter Par 400 - Conditions for the Conduct of Parolees, Part Par 401 Parole Conditions, NH ADC PAR 401.02(b)(13).

Further, petitioner has not shown a violation of the Interstate Agreement on Detainers. He merely alleged that neither the BOP nor the New Hampshire Department of Corrections "conducted" Interstate Agreement on Detainers "proceedings" without otherwise describing the "proceedings" he was deprived of and without describing the nature and extent of any constitutional violation which may have resulted from their alleged failure to "conduct proceedings."

Finally, by his own admission, petitioner ultimately pled guilty to the new charges pending against him in New Hampshire. It is well-settled that "[w]hen a defendant enters a voluntary and unconditional guilty plea, the plea has the effect of waiving all non-jurisdictional defects in the prior proceedings." United States v. Stevens, 487 F.3d 232, 238 (5th Cir.2007), cert. denied, --- U.S. ----, 128 S.Ct. 336, 169 L.Ed.2d 236 (2007). Consequently, a defendant who pleads guilty thereby waives all alleged violations of the Interstate Agreement on Detainers Act. See Baxter v. United States, 966 F.2d 387 (8th Cir. 1992).

### 3. Conclusion and Recommendation

Petitioner is entitled to habeas corpus relief pursuant to 28 U.S.C. §2241 only if he can show that he is in custody in violation of the Constitution and laws of the United States. See 28 U.S.C. §2241(c)(3). He has not done so.

Therefore,

15

**IT IS RECOMMENDED THAT** the Petition for Writ of *Habeas Corpus* be **DENIED** and **DISMISSED WITH PREJUDICE** because petitioner failed to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Alexandria, Louisiana, _May 26_, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE